**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN STARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-cv-01611 |
| | ) | |
| FEDERAL EXPRESS CORPORATION, | ) | Judge Joan H. Lefkow |
| d/b/a FEDEX EXPRESS, | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendant. | ) | |

**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, SUSAN STARRETT, by and though her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, FEDERAL EXPRESS CORPORATION, d/b/a FEDEX EXPRESS, states and alleges as follows:

**I.**

Plaintiff, SUSAN STARRETT, is a resident of the City of Chicago, County of Cook and State of Illinois. The Defendant, FEDERAL EXPRESS CORPORATION, d/b/a FEDEX EXPRESS ("DEFENDANT" or "FEDEX"), is a corporation incorporated under the laws of the State of Delaware with its principle place of business in Memphis, Tennessee.

**II.**

This matter was previously commenced by Plaintiff in the Circuit Court of Cook County, Illinois, and removed to this district by Defendant pursuant to Title 28, United States Code, §1441, and therefore venue is proper within this district.

**III.**

Jurisdiction of this action is based on Title 28, United States Code, § 1331 and the federal common law, as Defendant is an air carrier involved in the shipment of goods which became damaged.

**IV.**

This is an action for declaratory judgment pursuant to Title 28, United States Code, §2201, for the purpose of determining a question of actual controversy between the parties as hereinafter more fully appears.  Essentially, the gravamen of the Plaintiff's claim is that she has suffered pecuniary injury by reason of her property being mutilated by someone at FedEx while in transit from Pennsylvania to her attorney's office in Chicago, and that said property, certain pathology slides relevant to a lawsuit which is pending for medical malpractice, had been sent to a reviewing physician, Dr. Austin, who returned them via Federal Express in a shipment which had been purchased and pre-paid by her attorneys and agents,  and hence Plaintiff was the third-party beneficiary of the subject shipping and was foreseeably the one who would suffer losses occasioned by any damage to that property.

**V.**

More particularly, Plaintiff, Susan Starrett, is currently battling against cervical cancer, but has also been compelled to file a lawsuit in the Circuit Court of Cook County, Illinois, against certain medical providers whose tardy diagnosis of her condition delayed the commencement of treatment, resulting in her condition being much worse than it would have otherwise been, if it had been properly and promptly diagnosed.  In connection with that medical malpractice case, Starrett's attorneys were required to get a medical evaluation in order to comply with the requirements of 735 ILCS 5/2-622 of the Illinois Code of Civil Procedure.  For

this purpose, her pathology slides were sent to one Dr. Robert Austin, who is connected with the prestigious Magee's Women's Hospital in Pittsburgh, Pennsylvania. Plaintiff, by her attorneys, sent the slides to Dr. Austin via Federal Express, and also provided him with a prepaid return bill so that the slides could be sent back to her attorneys in Chicago. Dr. Austin received the slides in good condition, and performed his examinations and prepared his report. On February 24, 2006 he packaged the slides, they still being in good and undamaged condition, in their case and wrapped them in multiple protective layers such as would allow them to be sent without harm or damage. On February 27, 2006, Plaintiff, through her agents and attorneys, received the package sent on the prior day via FedEx. The package had been pierced through, as though by a nail, spike or hook, to its very core, with the result that many of the slides were damaged and some wholly destroyed. There is no way that this damage could have been done in the absence of either gross negligence, willful and wanton misconduct, or intentional misconduct, by those who, noting that the package was intended for a law firm, specifically intended a destructive blow against it.

## VI.

Plaintiff, by her agents and attorneys, who on her behalf purchased the service from Defendant, has given timely and proper notice to the Defendant of this injury to property, but, after a claim had been submitted, Defendant has taken the position that its contract terms limit its liability to a One Hundred ($100.00) Dollars, and has refused Plaintiff any payment above that amount. At the time that she learned that the slides had been crushed, and for a long time thereafter, Plaintiff was uncertain as to the amount or even the fact of damages which she might suffer in consequence of that injury. At first it was believed that damage to the slides would

impair the Plaintiff's ability to prove her medical malpractice case, but that concern has not materialized. Subsequently, however, and shortly before commencing her suit in Cook County, that she became aware that litigation was threatened against her by the defendants in that malpractice case because of the impact that the broken slides might have on their theory, which lawsuit has now been filed against her and is pending. Plaintiff has therefore been obliged to incur costs in the defense of that case which are many times the amount Defendant claims is the limit of its liability. Accordingly, Plaintiff has initiated her suit within a year of her suffering actual pecuniary damage and learning that she had a right of action for recognizable damages.

## VII.

Plaintiff never disputed that the facial terms of the "carriage agreement" would potentially limit her recovery to an amount less than the actual damages she sustained. Her position has always been (and this was the gravamen of her state court complaint), that the circumstances in the case at bar, and the character of the injury done to the package, went far beyond the scope of ordinary negligence into the realm of the egregious: gross negligence, willful and wanton misconduct, and/or intentional destruction. It is the Plaintiff's position that such conduct was so far beyond that which a reasonable person might foresee in entrusting property to the Defendant, that it was beyond the contemplation of the parties in making their agreement and, accordingly, the exculpatory terms of the Defendant's agreement would be unenforceable. An actual controversy therefore exists between (i) Plaintiff and (ii) Defendant, concerning its contract for shipping a package and the destruction of said package sent to Plaintiff, and, particularly; whether, under the circumstances of this case, or like circumstances, the exculpatory and/or limiting terms of the Defendant's "contract of carriage," are justly

enforced. (A copy of a letter from Defendant asserting those contractual limitations is attached hereto as Exhibit "A.") Plaintiff has a tangible legal interest in resolving the above described dispute since her remedies against Defendant have been effectively extinguished by the purported contractual terms, and she therefore brings this Count pursuant to Title 28, United States Code, § 2201.

## VIII.

Preemption of cargo cases is not absolute, and contract matters may be heard in state courts. Since the case at bar involved, inter alia, the enforceability of contractual terms, Plaintiff initiated this case in Illinois state court, maintaining that the agreement violated public policy. In due time, the Defendant removed the case at bar to the District Court, which upon further review, Plaintiff has accepted as being a proper court for this controversy. Plaintiff acknowledges, however, that existing federal common law favors the Defendant's position, and any further significant relief beyond the contractual terms alluded to in its letter, Exhibit "A," involves a modification or change of existing law, or for establishing new law, for which Plaintiff alleges there are good faith, non-frivolous arguments, which is the subject of the following allegations.

## IX.

The majority of the customers which purchase Defendant's service are not sophisticated users in the terms of shipping or the laws concerning it. These customers do in fact rely upon the candor and good faith of the Defendant in dealing with them, and are not independently aware of the details of the terms under which the Defendant's service is rendered. In fact, the rights claimed by Defendant turn upon documents which are lengthy, and complicated, and which the Defendant does not in reality expect its customers to read or comprehend in purchasing their

service. The most important of their documents, from the standpoint of disclaimers by Defendant, is the "FedEx Service Guide," which is not readily available to ordinary customers and does not as a matter of fact give ample or adequate notice to non-commercial users of the limitations or alternatives which FedEx seeks to impose upon the transaction.

Existing federal law has countenanced the system of formal, technical disclaimers and found them legally sufficient to allow carriers such as Defendant to enforce their contractual limitations. The fact of the matter is, however, that Defendant's non-commercial customers are in reality unaware of the character of the agreement they are offered, which is essentially that they have no right of recovery beyond the One Hundred ($100.00) Dollars regardless of what happened to their package or why, even if egregious or intentional misconduct was involved. Plaintiff believes in good faith that the foregoing rule ought to be modified in the interests of justice and the good of the economy, and asks that the Court declare that Defendant should be required to give a plain language, black box warning on their air bill which alerts potential customers of their real risks, so that they can make a meaningful evaluation of whether FedEx is the right method of transport. The opportunity to make that actual evaluation is at the heart of the "released value doctrine," upon which the Defendant relied in refusing to consider any compensation to the Plaintiff beyond the hundred dollars and the return of the price of the shipment. See: Exhibit "A". The current interpretation of the "released value doctrine" ignores the realities of the actual practices and expectation of the Defendant and its consumer customers, and defeats the logic and original policy of that doctrine, which was formulated in a vastly different time, when shipping was largely done by business and commercial users, and not by unsophisticated consumers. Plaintiff will therefore ask this Court for a modification or change in

the "released value doctrine," to prevent "fine print" terms from controlling Defendant's obligation to consumers where a "black box" warning would serve to give better notice and be more in keeping with the rationale and historic application of that doctrine.

**X.**

Additionally, Federal common law recognizes that public policy prevents such carriers as Defendant from enforcing contractual limitations in the instances where there is improper conduct from which the carrier itself profits directly. The general weight of authority, however, is that there is no liability beyond the contractual limitations for even the gross or intentional misconduct of employees. Plaintiff believes that there is a good faith argument for the modification of this rule to include employees' misconduct under general rules of vicarious liability because not to do so encourages and facilitates such misconduct. Further, customers' property rights warrant at least some minimal protection rather than an arrangement calculated to foster indifference; additionally, the legislative purpose of not having interstate commerce governed by local or regional rules would not be negatively impacted by such a modification.

WHEREFORE, Plaintiff prays that:

1. The Court enter a declaratory judgment in favor of Plaintiff and against Defendant declaring that it be and is liable for egregious or intentional misconduct committed by its employees such that any exculpatory or limiting provisions of any agreement not be applicable to such cases, and, particularly, that any contractual limitation as to dollar amount of liability for its damage or destruction of property, regardless of its culpability, be held unenforceable; and additionally or alternatively,

2.  The Court enter a declaratory judgment in favor of Plaintiff and against Defendant declaring that Defendant has a duty to give consumers a clear, plain language "black box" warning that its customers have essentially no right or remedy for loss or damage to their property irrespective of Defendant's culpability, as a condition of the "released value doctrine," being invoked in Defendant's favor; and further,

3.  That upon granting of any of the foregoing relief, the Plaintiff be given leave to file a motion for additional relief pursuant to 28 U.S.C.A. §2202, and that, after any discovery that may be appropriate, the Court conduct a hearing as to Defendant's liability for damages with reference to aforesaid contractual limitations; and also,

4.  The Court grant such other and federal relief as may be proper.

                                                                         Respectfully submitted,

Dated: July 10, 2008                                    s/Brian T. Nash

                                                                     Brian T. Nash
                                                                     CLIFFORD LAW OFFICES, P.C.
                                                                     120 North LaSalle Street
                                                                     31st Floor
                                                                     Chicago, Illinois 60602
                                                                     (312) 899-9090
                                                                     btn@cliffordlaw.com

                                                                     *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

    I, Brian T. Nash, certify that on this 10th day of July, 2008, a true and correct copy of **Second Amended Complaint for Declaratory Judgment,** filed electronically and served by electronic mail, and first-class mail upon the following counsel of record:

Patrick J. Keating
O'Hagan Spencer, LLC.
1 E. Wacker Drive, Suite 3400
Chicago, IL 60601

Michael W. Higginbotham

Federal Express Corporation

3620 Hacks Cross Road

Building B-3d Floor

Memphis, Tennessee 38125

                                                                   s/Brian T. Nash
                                                                   CLIFFORD LAW OFFICES, P.C.
                                                                   120 N. LaSalle Street
                                                                   31st Floor
                                                                   Chicago, Illinois 60602
                                                                   Tel: (312) 899-9090
                                                                   Fax: (312) 251-1160
                                                                   E-Mail: btn@cliffordlaw.com

# EXHIBIT A

Legal
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN 38125

Telephone 901.434.8600



June 14, 2006

**VIA FEDERAL EXPRESS - 312/899-9090**
Susan A. Capra, Esq.
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago, IL  60602

    Re:    *Susan Starrett*
            *Case No. 0303023667*
            *Tracking No. 848332827730*

Dear Ms. Capra:

    Pursuant to our conversation of June 7, 2006, please direct all further communications regarding this matter to my attention, and remove all other FedEx contacts from your service list. At this time, I am the sole point of contact. I have received and reviewed your letter dated June 6, 2006 to Ms. Claudia Robinson rejecting the tender of our settlement check. You further indicated that you intend on behalf of your client to assert claims for all damages she allegedly has suffered. Before proceeding along that course of action, I strongly suggest that you carefully read the contract of carriage consisting of the airbill and service conditions. Our liability is limited by the contract, which is governed by federal common law and the Declared Value Doctrine.

    We regret any inconvenience experienced by your client.

    Please contact me if you have any other questions.

                          Very truly yours,

                          FEDERAL EXPRESS CORPORATION

                          Colby S. Morgan, Jr.
                          Senior Counsel - Litigation
                          (901) 434-8545
                          Fax: (901) 434-9278
                          csmorgan@fedex.com

Susan A. Capra, Esq.
June 14, 2006
Page 2


CSM:mek
cc: Ms. Claudia Robinson
    FedEx Express
    Post Office Box 727
    Memphis, TN  38194-2112

    Mr. Oran Quintrell
    FedEx Customer Relations
    3875 Airways Blvd., 3rd Floor
    Memphis, TN  38116-4634


604518